**Albert P. KELLER, Individually and on Behalf of 501 South Cherry Joint Venture, Plaintiff,**

**v.**

**Carl T. MILLICE, Defendant.**

**Civ. A. No. H–92–3140.**

United States District Court, S.D. Texas, Houston Division.

Nov. 29, 1993.

Jonathan Lake Tankersley, Brown, Parker & Leahy, Houston, TX, for Albert P. Keller.

Kelley Maria Keller, Shrader Rothfelder Grote & Cicack, Charles J. Pignuolo, Horan & Devlin, Houston, TX, for Carl T. Millice.

---

## MEMORANDUM AND ORDER

STACY, United States Magistrate Judge.

Pending before the Court are three motions made by Carl T. Millice, Defendant. The first is a motion to dismiss or transfer venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure due to improper venue (Instrument No. 3). The second is a motion to dismiss with prejudice or transfer venue on the basis of forum non conveniens (Instrument No. 4). The third is a motion to dismiss or transfer venue under Rule 12(b)(1) due to lack of subject matter jurisdiction (Instrument No. 3).

On February 19, 1993, the parties consented to trial before a United States Magistrate Judge under 28 U.S.C. § 636(c). United States District Judge Ewing Werlein, Jr. referred this case to United States Magistrate Judge Frances H. Stacy to conduct all further proceedings, including final judgment. After reviewing Defendant's motions and the Plaintiff's responses, as well as the applicable law and the other documents filed in this case, the Court concludes that each of the Defendant's motions should be denied.

## I. BACKGROUND

This action arises from an agreement entered into by Albert P. Keller ("Keller"), Plaintiff, and Carl T. Millice ("Millice"), Defendant, to form a joint venture pursuant to the general terms of the Texas Uniform Partnership Act. Both Keller and Millice were residents of Texas at the time they entered into the agreement. The purpose of the joint venture was the development of two office buildings on a tract of land in Glendale, Colorado to be known as "One Cherry Center." The joint venture agreement was signed by the parties on August 3, 1982, and was to remain in effect for an unlimited period of time.

In order to fulfill his obligations as Operating Partner under the joint venture agreement, Millice moved to Denver, Colorado in 1984 and currently resides there, while Keller remained in Houston to fulfill his duties as Controlling Partner. A building and a parking garage were erected on the property in Colorado. Millice's subsequent activities surrounding the management and sale of the property are in question in this action. Keller alleges that Millice breached fiduciary duties owed to Keller and to the joint venture by using joint venture assets to operate a separate competing enterprise, by failing to inform the joint venture of negotiations to

sell the property, and by selling the property without the knowledge and consent of the joint venture and Keller.

Along with a denial of these allegations, Millice filed a motion to dismiss with prejudice or to transfer venue due to improper venue, a motion to dismiss with prejudice or to transfer venue on the basis of the doctrine of forum non conveniens, and a motion to dismiss with prejudice or to transfer venue due to lack of subject matter jurisdiction. Millice asserts that since he is currently a resident of Colorado, that the property in question is located in Colorado, and that the allegedly improper acts were conducted in Colorado, a more appropriate forum for this action would be the United States District Court in Colorado.

## II. VENUE

Millice asserts that venue is not proper in the Southern District of Texas and has moved to dismiss the case or transfer venue to the United States District Court of Colorado under Rule 12(b)(3). Venue in federal courts is generally governed by 28 U.S.C. § 1391 (Supp. I 1993), which states that:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Keller and Millice disagree as to whether or not Defendant is subject to personal jurisdiction in the Southern District of Texas. Millice, in his motion for dismissal with prejudice or transfer of venue (Instrument No. 3), claims that his contacts with the Southern District of Texas are insufficient to justify jurisdiction.

In a diversity action, personal jurisdiction may be exercised over a nonresident defendant if (1) the nonresident defendant is amenable to service of process under the law of the forum state and (2) the exercise of jurisdiction under state law comports with the due process clause of the Fourteenth Amendment. *Stuart v. Spademan,* 772 F.2d 1185, 1189 (5th Cir.1985), (citing *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir.1985)). *See also Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992).

Keller claims that the law governing service of process in this state, known as the Texas Long Arm Statute, Tex.Civ.Prac. & Rem.Code Ann. § 17.042 (Vernon 1986), operates here to allow the Court to assert personal jurisdiction over Millice. This statute authorizes an exercise of personal jurisdiction over nonresidents when the cause of action arises from the nonresident doing business in the state. "Doing business" has been defined to include entering into a contract which is performable as a whole or in part in Texas. *Id.* In the pending case, Millice entered into the joint venture contract with Keller. The contract was performable in part in Texas because the managerial functions of Keller as controlling partner were to be carried out by him in Houston, Harris County, Texas.

An exercise of jurisdiction by this Court under the Texas Long Arm Statute is permissible as long as such an assertion of jurisdiction would not violate the defendant's constitutional due process rights. *Amoco Oil Co. v. Phillipe Martin & Associates,* 811 F.Supp. 253 (S.D.Tex.1993), *aff'd,* 998 F.2d 1013 (5th Cir.1993). *See also Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). No independent analysis of the Texas requirements for service of process is necessary. As long as the use of the Texas statute to exercise jurisdiction over Millice would not violate the due process clause of the Fourteenth Amendment, it is a permissible vehicle for the Court to assert jurisdiction over him.

■ In order to meet the constitutional standards of due process, personal jurisdiction must satisfy two tests. These two tests require a determination that the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). First, the defendant must have "minimum contacts" with the forum state resulting from an affirmative act or acts on his part. Second, it must not be unfair or unreasonable to require the nonresident to defend the suit in the forum state. *Growden v. Ed Bowlin and Associates, Inc.,* 733 F.2d 1149, 1150 (5th Cir.1984).

The first requirement for personal jurisdiction, "minimum contacts" with the forum state may be satisfied by showing either "specific" or "general" contacts with the forum. *Interfirst Bank Clifton v. Fernandez,* 844 F.2d 279, 283 (5th Cir.1988). Keller alleges that both specific and general jurisdiction exist over Millice. Only one type need be established in order to show personal jurisdiction.

## A. Minimum Contacts

■ Specific jurisdiction relies on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). The minimum contacts requirement is satisfied when the contact with the forum state is a result of the defendant's purposeful conduct and not from the unilateral activity of the plaintiff. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). " 'Random', 'fortuitous', or 'attenuated'" contacts are insufficient. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 486, 105 S.Ct. 2174, 2189, 85 L.Ed.2d 528 (1985), (quoting *World–Wide Volkswagen,* 444 U.S. at 299, 100 S.Ct. at 568). In some cases, one contact from which the cause of action arises may be sufficient to meet the minimum contacts requirement. *Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 772 (5th Cir.1988),

(citing *Micromedia v. Automated Broadcast Controls,* 799 F.2d 230, 234 (5th Cir.1986)).

■ To establish specific jurisdiction in a case based on a contract, as in the instant action, more than mere contracting with a resident of the forum state is necessary to subject a nonresident to the forum's jurisdiction. *Colwell Realty Invest., Inc. v. Triple T Inns, Inc.,* 785 F.2d 1330 (5th Cir.1986). Even with this standard in mind, the nature of Millice's conduct in the Southern District of Texas is sufficient to support a finding that the minimum contacts necessary for specific jurisdiction are present. The facts present in the instant case are analogous to the situation in *Command–Aire Corp. v. Ontario Mechanical Sales and Service Inc.,* 963 F.2d 90 (5th Cir.1992). In *Command–Aire,* personal jurisdiction over the nonresident defendant was upheld when a contract for sale was entered into which provided for dispute resolution in Texas, was performed partially in Texas, and the defendant traveled to Texas due to matters related to the contract.

The situation in *Command–Aire* is similar to the instant action, where Millice, while residing in Texas, purposefully entered into the contract forming the joint venture. The joint venture agreement was made pursuant to the Texas Uniform Partnership Act, and any disputes under the contract were to be governed by Texas law. This agreement was performed in part in Texas, since Keller's duties as Controlling Partner were to be carried out by him in Houston, Texas. Because Millice's contacts with Texas were more than mere contracting with a Texas resident, they are significant enough to satisfy the minimum contacts requirement for specific jurisdiction over the person.

## B. Fair Play and Substantial Justice

■ Since the requirements for minimum contacts have been met, we must evaluate whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). To satisfy this test, the conduct of the defendant in the forum state must justify a conclusion that he should reasonably have anticipated being ha-

led into court in the forum state. *World–Wide Volkswagen,* 444 U.S. at 291, 100 S.Ct. at 564.

A contractual arrangement similar to the contract in the instant case was examined by the United States Supreme Court in *Burger King Corp. v. Rudzewicz,* 471 U.S. at 466, 105 S.Ct. at 2178. In *Burger King,* the defendants entered into an agreement with the plaintiff corporation to buy and operate a restaurant franchise. The plaintiff corporation's place of business was in Florida, and the defendants were residents of Michigan. The franchise agreement was made in Florida, governed by Florida law, and required payments to be sent to Florida. The day to day monitoring of franchises was not done from Florida, but from district offices around the nation which reported to the corporate office in Florida. Major policy decisions, as well as decisions regarding financial problems and payment delinquencies, were controlled by the corporate headquarters in Florida.

The plaintiff corporation sued the defendants for breach of the franchise agreement in a Florida court. The defendants claimed that they did not have the necessary minimum contacts with the forum to be sued in a Florida court. Under these facts, the Supreme Court held that the defendants should have reasonably anticipated being haled into court in Florida, so a finding that personal jurisdiction existed in a Florida court did not offend traditional notions of fair play and substantial justice.

The facts of the instant action are very similar to those in *Burger King.* While they were both Texas residents, Keller and Millice entered into a contract in Texas, which was governed by Texas law and was part performable in Texas. These facts are at least as compelling as those found in *Burger King* to warrant a finding that Millice should have reasonably anticipated being haled into court in the Southern District of Texas. Therefore, according to the reasoning of *Burger King,* this Court may assert personal jurisdiction over Millice without offending traditional notions of fair play and substantial justice.

Assertion of personal jurisdiction over Millice does not constitute a violation of due process. The requirements of 28 U.S.C. § 1391 have been met; therefore, venue is proper in the Southern District of Texas. Accordingly, Millice's motion to dismiss with prejudice or to transfer venue based on improper venue is denied.

### III. FORUM NON CONVENIENS

■ Millice has also filed a motion to dismiss with prejudice or to transfer venue based on the common law doctrine of forum non conveniens. The motion to dismiss on grounds of forum non conveniens cannot be granted, since "only when the more convenient forum is a foreign country can a suit brought in a proper federal venue be dismissed on grounds of forum non conveniens." *In Re: Air Crash Disaster Near New Orleans,* 821 F.2d 1147, 1159 (5th Cir.1987), *vacated on other grounds, sub nom., Pan American World Airways, Inc. v. Lopez,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989).

■ The pending motion requests a transfer of venue to the United States District Court in Colorado; therefore, the common law doctrine of forum non conveniens is not applicable. "If the motion seeks a change of forum within the federal system, 28 U.S.C. § 1404(a) applies instead of the common law doctrine of forum non conveniens." *In Re Air Crash,* 821 F.2d at 1159. The federal convenience statute provides, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404 (1976).

■ To decide a motion to transfer under § 1404(a), the court must weigh the inconvenience of trying the case in the original forum against the plaintiff's privilege to choose the forum. *Wiren v. Laws,* 194 F.2d 873 (D.C.Cir.1951). In order to weigh these elements, the court must balance the convenience factors presented by the parties. *Nizin v. Bright,* 342 F.Supp. 489 (S.D.N.Y. 1972). If the defendant's showing of inconvenience is inadequate, then the court will be

unable to weigh the convenience factors. *Quality Beverage Co. v. Sun–Drop Sales Corp.*, 291 F.Supp. 92 (E.D.Wis.1968). The plaintiff's choice of forum is the most influential factor and should rarely be disturbed unless the balance of convenience is strongly in the defendant's favor. *United Sonics Inc. v. Shock*, 661 F.Supp. 681, 682–83 (W.D.Tex. 1986).

In the pending controversy, Millice claims that a Texas forum is inconvenient because material documents, witnesses, and the related property are all in Colorado. He also claims that he will be required to attend numerous hearings in Texas, imposing on him an undue burden of travel. Finally, Millice claims that the enforceability of any judgment against him will be impaired since the Texas judgment would have to be registered in Colorado.

None of these arguments are persuasive enough to warrant a transfer of venue. Material documents may be easily transported to the Southern District of Texas for trial. There is no need to view the related property to rule on Keller's claims. While it is possible that potential witnesses would be inconvenienced by the travel from Colorado to Texas for trial, Millice has only generally raised this as a possible problem and he has not specifically identified witnesses upon whom this hardship may fall. Without proof of a particular inconvenience that is likely to occur, this factor does not weigh on the side of transfer. As to the numerous hearings and travel burdens upon Millice, this Court does not presently share the view that numerous hearings will be required. If several hearings are required, transferring venue would only shift the travel burden from Millice to Keller. Finally, the requirement of registering a judgment in Colorado is not considered to be an inconvenience.

These factors do not combine to constitute the sort of inconvenience that requires a transfer of venue. Keller's choice of forum, which is more convenient for the efficient resolution of this case, outweighs the considerations presented by Millice. Therefore, Millice's motion to dismiss with prejudice or transfer venue based on *forum non conveniens* is denied.

## IV. SUBJECT MATTER JURISDICTION

Millice has asserted that this court lacks subject matter jurisdiction over the controversy because it "lacks jurisdiction to adjudicate the rights to real property in Colorado," and therefore is without authority to impose a constructive trust as Keller requests. Keller contends that Millice's claim "reveals a fundamental misunderstanding of the concept of subject matter jurisdiction," since subject matter jurisdiction is governed by 28 U.S.C. § 1332. This statute in pertinent part states:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—
>
> (1) citizens of different states;

28 U.S.C. § 1332 (Supp. I 1993). Because these requirements are clearly met in this action, Keller insists that subject matter jurisdiction exists. Keller is correct in his statutory analysis, but this is not entirely dispositive of the jurisdiction issue. Even though Millice's objection to subject matter jurisdiction is vaguely fashioned and he cites no authority for his argument, we construe his objection to the subject matter jurisdiction of this Court as a challenge based upon the local action doctrine or upon general common law principles of jurisdiction.

### A. Local Actions

#### 1. Origins of the Local Action Distinction

The implementation of the local action doctrine dates back hundreds of years,[1] and even though it has been suggested that

---

1. *See* William W. Blume, *Place of Trial of Civil Cases*, 48 Mich.L.Rev. 1 (1949), where Blume traces the origin of the local action doctrine back at least seven hundred years to the Court of Common Pleas in England in the thirteenth century. Attention was also given to the matter by such distinguished nineteenth century English legal theorists as Blackstone, Stephen, and Coke. *See also* William H. Wicker, *The Development of the Distinction Between Local and Transitory Actions*, 4 Tenn.L.Rev. 55 (1925).

the doctrine is outdated and should be abandoned,[2] it remains a valid jurisdictional requirement in Texas that must be satisfied. The doctrine's applicability today as a limitation on jurisdiction was affirmed in *Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 290 (5th Cir. 1987), where the court stated that "the rule is not outdated and archaic. The rationale for the rule is as forceful today as it was in Chief Justice Marshall's time."[3] The Fifth Circuit Court of Appeals was referring to Judge John Marshall's opinion in *Livingston v. Jefferson*, 15 Fed.Cas. 660 (C.C.D.Va.1811), where the local action doctrine was first applied in the United States.

In *Livingston*, an action for trespass to land was brought in a Virginia court. The land which was the subject of the suit was located in Louisiana. Judge Marshall explained that originally, all actions were local and had to be tried in the jurisdiction where the property was located. Through judicial modification, some actions were deemed transitory and could be tried in any district where the defendant was located. The *Livingston* court decided that an action for trespass to land was a local action which must be brought in the district where the property is located; therefore, the case was dismissed, since it should have been brought in a Louisiana court.

■■■ The local action doctrine applies even though 28 U.S.C. § 1332 governs the area of subject matter jurisdiction. In *Casey v. Adams*, 102 U.S. 66, 26 L.Ed. 52 (1880), the Supreme Court held that the local action doctrine was not displaced by a statute stipulating the jurisdiction over national banks. Chief Justice Waite explained:

... no one has ever supposed that laws which prescribed generally where one should be sued, included such suits as were local in their character, either by statute or the common law unless it was expressly so declared. Local actions are in the nature of suits in rem, and are to be ·prosecuted where the thing on which they are founded is situated.

102 U.S. at 67–68. *See also* 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3822 (1986). Applying this reasoning, and noting that 28 U.S.C. § 1332 does not expressly supersede the local action doctrine, we conclude that the local action doctrine is still applicable to questions of subject matter jurisdiction. This Court must determine how it applies to the instant action.

## 2. Venue or Jurisdiction

Many aspects of the application of the local action doctrine are problematic. Some have not been dealt with adequately or logically. One of these problem areas is the question of whether the local action doctrine is a matter of venue or a matter of subject matter jurisdiction. In *Eddington v. Texas & N.O.R. Co.*, 83 F.Supp. 230 (S.D.Tex.1949), a district court in Texas treated the local and transitory distinction as a venue question. More recently, the Court of Appeals for the Seventh Circuit also viewed a local action question as one of venue in *Raphael J. Musicus, Inc. v. Safeway Stores, Inc.*, 743 F.2d 503 (7th Cir.1984). The Fifth Circuit took a contrary view in a later case, and clearly permitted the application of the local action doctrine to subject matter jurisdiction despite the historical confusion of classification. *Hayes v. Gulf Oil Corp.*, 821 F.2d 285 (5th Cir.1987).[4]

---

**2.** "Jurisdictional judgments should not be based on an arcane inquiry into whether an action is transitory or local." Steven E. Winn, *The Long-Arm Wrestle: Personal Jurisdiction in Tennessee*, 56 Tenn.L.Rev. 557, 587 (1989). *See also Little v. Chicago, S.P., M. & O.R. Co.*, 65 Minn. 48, 67 N.W. 846 (1896), which rejected the specific application of the local action doctrine in *Livingston v. Jefferson*, 15 Fed.Cas. 660 (C.C.D.Va. 1811), stating that it was "wrong in principle" and that the judges "do not feel bound to adhere to it, notwithstanding the great array of judicial decisions in its favor." *Little*, 67 N.W. at 847.

**3.** *See also* Rose Marie Chidichimo, Douglas Lohmar, and Renita Sterling, *Civil Procedure: An Active Term for the Seventh Circuit*, 62 Chicago–Kent L.Rev. 467, 479 (1986), which affirms the vitality of the local action doctrine.

**4.** More recently, the Court of Appeals for the Fifth Circuit in *Trust Company Bank v. United States Gypsum Co.*, 950 F.2d 1144, 1149 (5th Cir.1992) acknowledged that it was unclear whether the local action doctrine was a question or jurisdiction or of venue. The Court avoided clarifying this issue because the doctrine's im-

We follow the precedent set in *Hayes* and apply the local action doctrine to Millice's challenge to subject matter jurisdiction.

### 3. Federal or State Law

Another area of confusion about the local action doctrine is whether federal or state law applies in determining whether an action is local or transitory. Determinations of subject matter jurisdiction and venue for federal courts are normally controlled by federal law. 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3822, at 207 and n. 22 (1986). A contrary rule has evolved for the application of the local action doctrine.

The Court of Appeals for the Fifth Circuit in *Trust Company Bank v. United States Gypsum Co.*, 950 F.2d 1144, 1149 (5th Cir. 1992) traced the development of the common law regarding whether federal or state law controls when the local action doctrine is involved. Dicta in the United States Supreme Court's opinion in *Huntington v. Attrill*, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed.1123 (1892) stated that state law, not federal law, should apply to determine whether an action is local or transitory. The Court of Appeals for the Fifth Circuit followed this erroneous dicta when it decided *Chateau Lafayette Apartments, Inc. v. Meadow Brook National Bank*, 416 F.2d 301 (5th Cir.1969), and held that the law of the forum state, not federal law, controlled the application of the local action doctrine to questions of jurisdiction or venue in federal courts. In *Trust Company Bank*, the Fifth Circuit acknowledged that the precedent set in *Chateau Lafayette Apartments* was contrary to logic and intuition, but the Court declined to overrule it because it had been relied on as authority for many years.

 In accordance with precedent, Texas law governs the way the local action doctrine applies to subject matter jurisdiction in federal courts located in Texas, even though

federal law usually determines questions of venue and jurisdiction of federal courts. This deviation from usual practice when a local action question is involved does not have a great impact on how the doctrine is applied, since "in most instances state law has developed in accordance with federal decisions." *Hayes v. Gulf Oil Corp.*, 821 F.2d at 288, citing 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3822 (1986).

### 4. The *Livingston* Formulation of the Local Action Doctrine

It has been keenly pointed out that "attempts to define the distinction between local and transitory actions have been notoriously unsuccessful." 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3822 p. 205 (1986), citing *Wheatley v. Phillips*, 228 F.Supp. 439 (W.D.N.C.1964). The clarity of Texas law in this area is no exception. There are currently no state statutory provisions to guide the courts in applying the doctrine.[5] The common law supplies the only guidance on how Texas applies the local action doctrine.

The basis for the local action doctrine in the United States is the *Livingston* case, wherein Judge Marshall determined that "actions are deemed transitory, where transactions on which they are founded, might have taken place anywhere; but are local where their cause is in its nature necessarily local." *Livingston*, 15 Fed.Cas. at 664. Texas has adopted the *Livingston* formulation.

Concerning the local action doctrine, 1 Tex.Jur.3d *Actions* § 38 (1979) paraphrases the language from *Livingston* to articulate the doctrine as it applies in Texas, but strangely does not cite the *Livingston* case or any other authority for this proclamation. Additionally, M.L. Cook, *Jurisdiction—Local and Transitory Actions*, 9 Tex.L.Rev. 614

---

pact on that particular case was the same regardless of whether it was applied as a rule of venue or of jurisdiction.

**5.** The Texas legislature has in the past recognized implicitly that such a distinction exists by stipulating that "suits for the recovery of lands or damages thereto, or to remove incumbrances

upon the title to land, or to quiet the title to land, or to prevent or stay waste on lands, must be brought in the county in which the land, or a part thereof, may lie." Tex.Rev.Civ.Stat.Ann. vol. 5, art. 1995, § 14 (Vernon 1964). This article was repealed and replaced by Tex.Civ.Prac. & Rem.Code Ann. § 15.001 (Vernon 1986), which did not incorporate this language.

(1931) lists the Texas Supreme Court in *Morris v. Missouri P.R. Co.*, 14 S.W. 228 (Tex. 1890) as following the *Livingston* view. The *Morris* court recognized that *Livingston* appeared to have been followed numerous times, and used the *Livingston* formulation to support its holding that injury to land is a local action.

### 5. The Development of the Local Action Doctrine in Texas

Most Texas cases, whether decided by federal or state courts, do not attempt to apply the local action doctrine as articulated in *Livingston*, but instead tend to decide each case individually without implementing a common definition of local actions. Texas courts have not specifically adopted the *Livingston* standard in their opinions, but all cases arrive at results consistent with the *Livingston* formulation of the local action doctrine.

One exception to the Texas courts' failure to articulate a standard for applying the local action doctrine is found in *Hunter v. U.S. Dept. of Agriculture*, 69 F.Supp. 377 (N.D.Tex.1946). The United States District Court for the Northern District of Texas in *Hunter* proposed in dicta that "all actions relating to real property are local actions." The holding of *Hunter* concluded that an action to remove a cloud from title to land was a local action. 69 F.Supp. at 381. The dicta in *Hunter*, which proposed an overly broad definition of local actions, has not been adopted by other Texas courts as the rule, but subsequent cases are consistent with the specific holding in *Hunter* that an action to remove a cloud from title is a local action.

Texas cases tend to decide issues concerning the local action doctrine without articulating a standard basis for decision. For instance, in *Tyler v. Stanolind Oil & Gas Co.*, 77 F.2d 802 (5th Cir.), *cert. denied*, 296 U.S. 627, 56 S.Ct. 149, 80 L.Ed. 445 (1935), the Court of Appeals for the Fifth Circuit held that an action to remove a cloud from title to land was a local action. A Texas appellate court came to the same conclusion in *Harrington v. Western Nat'l Bank*, 572 S.W.2d 769 (Tex.Civ.App.—Amarillo 1978, no writ). In *Hayes v. Gulf Oil Corp.*, 821 F.2d 285 (5th

Cir.1987), the Fifth Circuit Court of Appeals held that an action to try title was a local action. In *Cole v. Lee*, 435 S.W.2d 283 (Tex. Civ.App.—Dallas 1968, writ dism'd w.o.j.), a Texas appellate court held that actions based on a contract were transitory. Finally, in *Lutheran Bhd. v. Kidder Peabody & Co., Inc.*, 829 S.W.2d 300 (Tex.App.—Texarkana 1992, writ dism'd), *judgment entered in accordance with settlement agreement*, 840 S.W.2d 384 (Tex.1993), a Texas appellate court affirmed that tort actions were transitory in nature.

Texas court decisions clearly fall within the parameters set by the *Livingston* decision when the issue is clearly either one of pure title or pure contract or tort. Questions of title mixed with other issues have been more difficult to deal with. Disputes in which a question of title is related to the action but is not the only issue in controversy have proven more difficult for Texas courts to characterize as local or transitory. These more difficult cases involve questions of title, which are clearly local, mixed with questions of contract, tort, or other clearly transitory actions.

No clear rule has emerged from the cases to guide the resolution of these more complicated mixed questions. For instance, a Texas appellate court in *Miller v. Howell*, 234 S.W.2d 925 (Tex.Civ.App.—Fort Worth 1950, no writ), determined that a suit brought to recover, partition, and to foreclose a lien on land located in Wood County could be brought in Bexar County. The Court found that the suit was actually an equitable proceeding for a partnership accounting and was "a transitory action, rather than a local one ... primarily a proceeding in personam, rather than a proceeding in rem." In *Sax v. Sax*, 294 F.2d 133 (5th Cir.1961), an action brought in Florida to set aside a supplemental trust agreement on grounds of fraud was found to be essentially an equitable suit to compel a person to undo a fraudulent conveyance of property located in Illinois and was "in personam or transitory". In *Citizens Nat'l Bank v. Cattleman's Production Credit Ass'n*, 617 S.W.2d 731 (Tex.Civ.App.—Waco 1981, no writ), a suit to foreclose on property to satisfy a mortgage lien was held to be a local action when the bank was only seeking

a remedy from the property and not a deficiency judgment from the mortgage holder. Even though no standard rule for deciding these tougher questions has been formally stated, a common theme exists in all of the cases. When elements other than a pure question of title are present, Texas courts tend to hold that the action is transitory. These results are consistent with the rationale of *Massie v. Watts,* 10 U.S. (6 Cranch) 148, 3 L.Ed. 181 (1810), discussed below.

### 6. The *Massie v. Watts* Approach

When faced with local questions of title mixed with other transitory elements, courts in other states have looked for guidance to the United States Supreme Court case of *Massie v. Watts,* 10 U.S. (6 Cranch) 148, 3 L.Ed. 181 (1810). This was a suit brought in Kentucky to compel a conveyance of land located in Ohio. Chief Justice John Marshall held that if the suit was a naked question of title, it would be a local action, but:

> ... where the question changes its character, where the defendant in the original action is liable to the plaintiff, either in consequence of contract, or as trustee, or as the holder of a legal title acquired by any species of mala fides practiced on the plaintiff, the principles of equity give a court jurisdiction wherever a person may be found, and the circumstance, that a question of title may be involved in the inquiry, and may even constitute the essential point on which the case depends, does not seem sufficient to arrest that jurisdiction.

10 U.S. at 158. The suit was found to have the elements of a transitory action, since it involved questions of implied contract and neglect of duty. 10 U.S. at 162–163. According to the Supreme Court's reasoning, all that is required to make an action transitory is the existence of a transitory element to keep the suit from being merely a naked question of title. The *Massie* approach simplifies the dispute and would avoid some of the problems the Texas courts have encountered in this area, while still arriving at the same results.

### 7. The Texas Distinction Between Local and Transitory Actions

Even though Texas courts have not explicitly applied any consistent articulable rationale to decide cases which require the application of the local action doctrine, this Court recognizes that the rationale set forth in *Livingston* and *Massie* has been implicit in the reasoning Texas courts have implemented. In essence, the Texas formulation of the local action doctrine, as derived from *Livingston, Massie,* and various Texas opinions, can be stated as follows: When an action relates to real property located outside of the jurisdiction of the forum, if the action requires the court to determine a party's title interest in the real property, the action is local and must be brought in the jurisdiction where the real property is located. Suits to try title or to remove a cloud from title are local actions under this reasoning. If the action requires the court to enforce a right in real property arising from a preexisting ownership interest, the action is transitory and may be brought in any court where personal jurisdiction over the defendant may be properly asserted. Suits to enforce contractual rights or equitable duties that are related to real property are transitory actions, even though the action may appear to be local, since a party's title interest in the property may be affected by the court's decision.

### 8. Applying Local Action Doctrine to Constructive Trusts

The question in the pending action is whether an action to impose a constructive trust is a local or transitory action. Texas courts have not yet decided this question. There exists authority in other states, however, that suggests that an action of this nature is transitory, thus jurisdiction would not be limited to the location of the property.

In the case of *Mandley v. Backer,* 121 F.2d 875 (D.C.Cir.1941), a suit was brought to ascertain a party's interest in real property, and to execute conveyances necessary to effectuate the equities and rights of the parties. This would have involved enforcing a constructive trust on property that was located outside the jurisdiction. The court relied on the reasoning of *Massie* to hold that "the

proper parties were before the court, and in such a case it is within its power to make a decree on an equity subsisting between the parties respecting property situated out of the jurisdiction." *Mandley*, 121 F.2d at 876.

In a case brought in the Northern District of California, *Miller & Lux, Inc. v. Nickel*, 149 F.Supp. 463 (N.D.Cal.1957), allegations were made that a corporation's officers deprived the corporation of large land holdings and acquired the land for themselves. Suit was brought to recognize the corporation's equitable interest by enforcing a constructive trust on the land, which was located in the Southern District of California. The court denied motions to dismiss and to transfer venue, relying on *Massie v. Watts* and *Mandley v. Backer* to support the conclusion that the action was transitory.

The question raised in the pending action is essentially the same as the questions addressed in *Mandley v. Backer* and *Miller & Lux*. In the instant case, Keller brought an equitable action for compensation for wrongful acts allegedly committed by Millice that deprived him of an interest in real property. Keller claims that Millice breached his fiduciary duties under the joint venture contract, which resulted in the sale of the property that was the subject of the joint venture. Keller asserts that he has an equitable interest in the property, and requests that the court protect this interest by imposing a constructive trust on the property. The Colorado property is located outside of Texas, and Millice is challenging the jurisdiction of this court over the subject matter.

In order to be a local action under the *Massie* rationale, this action must be a pure question of title and contain no other elements. The cause of action in the instant case is "in consequence of contract," since it relates to a breach of duty under the joint venture contract. Therefore, under the *Massie* rationale this action would not be a pure question of title. The contractual nature of the suit would make it transitory.

### 9. Applying Local Action Doctrine to Constructive Trusts in Texas

There are no Texas cases which apply the local action doctrine to the imposition of a constructive trust. We find the reasoning utilized in *Massie*, as applied by the California and District of Columbia courts, to be consistent with the basic formulation of the local action doctrine found in *Livingston*. The *Massie* reasoning is also in accord with the general nature of the Texas common law regarding local and transitory actions.

Therefore, when a suit is based on an alleged breach of fiduciary duty under a contract, a request that the court impose a constructive trust on land located in another state will not operate to make the suit a local action. This suit is a transitory action. The local action doctrine will not operate in the instant action to defeat subject matter jurisdiction in the Southern District of Texas. Millice's Motion to Dismiss With Prejudice or to Transfer Venue Based on Lack of Subject Matter Jurisdiction is DENIED.

### B. General Principles of Jurisdiction

■ Millice's challenge to the subject matter jurisdiction of this Court could also be decided by applying general principles of jurisdiction which do not directly employ a local action doctrine analysis. In previous cases similar to the instant action, Texas courts have used general jurisdictional concepts, similar to those espoused by the Supreme Court in *Massie*, to deal with challenges to the jurisdiction of a court to make decrees regarding real property located in another state.

The Texas Supreme Court in *Texas & P.R. Co. v. Gay*, 86 Tex. 571, 26 S.W. 599, 604 (1894) recognized that "there are classes of cases, however, in which courts of chancery may, through an action on persons over whom they have jurisdiction, indirectly affect title to property, real or personal, situated in a state not within their jurisdiction." The court in *Gay* elaborated on this statement by explaining that a court may not act directly upon property located in another state, but it may issue a decree over a defendant which affects such property. The court then stated that the United States Supreme Court in *Massie* approved of this reasoning. *Id.* 26 S.W. at 605. *See also Miller v. Miller*, 715

S.W.2d 786, 788 (Tex.App.—Austin 1986, writ ref'd n.r.e.).

A good illustration of the application of the jurisdictional principles found in *Gay* is the case of *Estabrook v. Wise,* 506 S.W.2d 248 (Tex.Civ.App.—Tyler 1974, writ ref'd n.r.e.), *vacated as moot,* 519 S.W.2d 632 (Tex.1974). In *Estabrook,* a former wife was suing her former husband over a one-half mineral interest in property located in another state that was allegedly conveyed to her by her husband during marriage. The court in *Estabrook* relied on the reasoning of *Gay* when it decided that a Texas court does not have the power or jurisdiction to render a judgment or decree which acts directly upon the title to real property situated in another state. However, when jurisdiction exists over the parties, the court can determine the preexisting rights and equities between the parties, even as related to realty in other states. It can then enforce its equitable powers to require a conveyance, if necessary, to carry out its decree. The court held that the plaintiff deserved equitable relief requiring the execution of a deed to real property; therefore, jurisdiction in a forum other than the location of the realty was proper.

The pending action raises a question similar to the one resolved in the *Estabrook* case. This Court has personal jurisdiction over Keller and Millice, and Keller is seeking to protect his preexisting equitable rights in the Colorado property, which were created by the joint venture contract. Under the principles expressed in *Gay* and *Estabrook,* this Court has the authority to make a determination of Keller's preexisting rights in the real property located in Colorado. In order to protect Keller's rights, this Court may make an equitable decree which affects property located in another state.

This Court has the authority, if necessary, to impose a constructive trust on the property in question as an exercise of its equitable powers. Such a ruling in equity would only protect Keller's potential remedy if he is entitled to receive damages from his claim of breach of fiduciary duty. A constructive trust arrangement would not operate directly upon the title to the property in question. Therefore, according to the general principles set forth in *Massie* and applied in *Gay* and *Estabrook,* the possibility of the imposition of a constructive trust by the Court in this action will not defeat the Court's subject matter jurisdiction.

## V. CONCLUSION AND ORDER

In light of the foregoing, it is, therefore, ORDERED that

(1) The motion filed by Carl T. Millice, Defendant to dismiss with prejudice or transfer venue due to improper venue is DENIED;

(2) The motion filed by Carl T. Millice, Defendant to dismiss with prejudice or transfer venue on the basis of forum non conveniens is DENIED;

(3) The motion filed by Carl T. Millice, Defendant to dismiss with prejudice or transfer venue due to lack of subject matter jurisdiction is DENIED.